# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-16-00123-CV

**Rebekha Montie, Appellant**

**v.**

**Bastrop County, Appellee**

**FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
NO. 28,961, HONORABLE REVA TOWSLEE-CORBETT, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

After Rebekha Montie was terminated from her job as a manager for an animal shelter in Bastrop County, she filed a suit against Bastrop County alleging that she was fired in violation of the Texas Whistleblower Act (the "Act"). *See* Tex. Gov't Code §§ 554.001-.010. In particular, she alleged that she was fired after she reported that her supervisor, Diane Mollaghan, who was the director for the shelter and Bastrop County Animal Services, was guilty of cruelty to animals. Specifically, Montie urged that Mollaghan failed to timely euthanize shelter animals that were injured or ill and failed to maintain the animals at the shelter by not providing them with adequate water and food or properly cleaning their cages, and she contended that Mollaghan's actions led to overcrowding and suffering by numerous animals, which Montie asserted violated provisions of the Penal Code as well as the Bastrop County Rabies and Animal Control Order ("Order"). *See* Tex. Penal Code § 42.092 (prohibiting cruelty to nonlivestock animals); Order § 8.1

(prohibiting abandonment, abuse, or neglect of animals as specified in section 42.092 of Penal Code). In response, Bastrop County filed a plea to the jurisdiction contending that the district court did not have jurisdiction over the case because Montie did not comply with the requirements for a claim under the Act. Subsequently, the district court convened a hearing on the plea. Once the district court considered the parties' various arguments, it issued an order denying Bastrop County's plea. Bastrop County appealed that ruling. *See* Tex. Civ. Prac. & Rem. Code §§ 51.014(a)(8) (allowing party to pursue interlocutory appeal of trial court's ruling denying plea to jurisdiction filed by governmental unit), 101.001(3) (defining "[g]overnmental unit" as including counties). In its appeal, Bastrop County argued that "the district court does not have jurisdiction over Montie's claims because she did not make a report to an appropriate law-enforcement authority," as required by the Act, when she allegedly informed two members of the Bastrop County Commissioners' Court ("Commissioners' Court") about the misconduct. *Bastrop Cty. v. Montie*, No. 03-14-00424-CV, 2015 WL 1611944, at *3 (Tex. App.—Austin Apr. 9, 2015, no pet.) (mem. op.). After considering the arguments offered by the parties, this Court determined "that Montie could not reasonably have believed that the two commissioners were an appropriate law-enforcement authority." *Id.* Accordingly, we concluded "that Montie was not entitled to protection under the Act" and reversed "the order of the district court denying Bastrop County's plea to the jurisdiction." *Id.* However, we also remanded "the case to the district court to allow Montie an opportunity to replead" "because the pleadings [did] not establish that Montie's claims suffer from an incurable jurisdictional defect." *Id.*

On remand, Montie amended her petition and asserted, among other things, that she made a complaint to an appropriate law-enforcement authority when she reported the alleged

2

misconduct by Mollaghan to Mollaghan herself. In response, Bastrop County filed a second plea to the jurisdiction asserting that the district court did not have jurisdiction over Montie's claims because Montie's claims did not satisfy the requirements of the Act. Further, as support for its arguments, Bastrop County attached an affidavit from the Chief Deputy of the Bastrop County Sheriff's Office, Charlie Littleton, to its plea. Subsequent to Bastrop County filing its plea, Montie filed a motion to strike Littleton's affidavit. After considering the arguments by the parties, the district court denied Montie's motion to strike and granted Bastrop County's plea to the jurisdiction. In three issues on appeal, Montie challenges the district court's rulings on her motion to strike and on Bastrop County's plea to the jurisdiction. We will reverse the district court's order granting Bastrop County's plea to the jurisdiction and remand the case for further proceedings.

## STANDARD OF REVIEW

"Subject matter jurisdiction presents a question of law" that appellate courts "review de novo." *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). Accordingly, appellate courts perform a de novo review of a trial court's ruling on a plea to the jurisdiction. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007); *see Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (explaining that "[a] plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction"). When performing this review, courts look to the plaintiff's petition to determine "whether the facts pled affirmatively demonstrate that jurisdiction exists." *State v. Holland*, 221 S.W.3d 639, 642 (Tex. 2007). "If the pleadings are insufficient to establish jurisdiction but do not affirmatively demonstrate an incurable defect, the plaintiff should be afforded the opportunity to replead." *Id.* at 643. However, if "the pleadings affirmatively negate the existence

3

of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227 (Tex. 2004). When, as here, "an action is grounded in statute, subject matter jurisdiction must be shown under the applicable statute." *Arnold v. Price*, 365 S.W.3d 455, 459 (Tex. App.—Fort Worth 2011, no pet.). Moreover, if a plea "challenges the existence of jurisdictional facts, [appellate courts] consider relevant evidence submitted by the parties when necessary to resolve the jurisdictional issues raised." *Miranda*, 133 S.W.3d at 227. Where a challenged jurisdictional fact overlaps with the merits and where "the evidence creates a fact question . . . [,] the trial court cannot grant the plea to the jurisdiction, and the fact issue will be resolved by the fact finder." *Id.* at 227-28.

In addition, the jurisdictional questions at issue in this appeal involve statutory construction, which appellate courts also perform de novo. *See Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010); *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008). When performing this analysis, our primary objective is to give effect to the legislature's intent. *Iliff v. Iliff*, 339 S.W.3d 74, 79 (Tex. 2011); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). In ascertaining that intent, we rely on the plain meaning of the words in the statute "unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning leads to absurd results." *DeQueen*, 325 S.W.3d at 635; *see Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009); *Shumake*, 199 S.W.3d at 284. If "a statute's words are unambiguous and yield but one interpretation," we "give such statutes their plain meaning without resort to rules of construction or extrinsic aids." *Combs v. Roark Amusement & Vending, L.P.*, 422 S.W.3d 632, 635 (Tex. 2013). Moreover, we look to the entire act and not just to "isolated

4

portions," *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008), and we read the statute as a whole, *In re Ford Motor Co.*, 442 S.W.3d 265, 280 (Tex. 2014). Furthermore, we presume that "the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind," *DeQueen*, 325 S.W.3d at 635, and we endeavor not to interpret a statute "in a manner that renders any part of the statute meaningless or superfluous," *Columbia Med. Ctr. of Los Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008).

## DISCUSSION

**Motion to Strike**

In her second issue on appeal, Montie challenges the district court's ruling regarding her motion to strike the affidavit from Littleton that Bastrop County attached to its plea to the jurisdiction. In his affidavit, Littleton explained that he is the Chief Deputy of the Bastrop County Sheriff's Office and assists the Sheriff in administering "the activities of the deputies in the various departments," including the Estray Division. *See Black's Law Dictionary* 631 (9th Ed. 2010) (defining "[e]stray" as "[a] valuable tame animal found wandering and ownerless; an animal that has escaped from its owner and wanders about"). In addition, he related that animal-cruelty cases are investigated by deputies for the Estray Division "who would then submit a completed investigation to the" district attorney. Further, he explained that although the animal shelter was under the supervision of the Sheriff's Office at the time that Montie was hired, supervision was later transferred to the Commissioners Court. When discussing Mollaghan, Littleton explained that she "was a Department Head in charge of the administrative and operational duties of the Shelter" and directed "the day to day operation of the animal shelter" but did not "conduct criminal investigations

5

of animal cruelty" and had no "authority to regulate or enforce animal cruelty criminal laws." Finally, he related that "Mollaghan was not a State of Texas certified peace office or prosecutor and therefore, could not investigate or prosecute criminal violations of law against anyone, including any violations of law against herself."

When challenging the district court's ruling, Montie asserts that the affidavit was not submitted until two years after the discovery period expired and 47 days before the scheduled trial date. *See* Tex. R. Civ. P. 190.3 (setting out level-two discovery control plan). Further, Montie contends that Bastrop County failed to disclose Littleton as either an expert or as a person with knowledge of relevant facts in its response to requests for disclosures under Rule of Civil Procedure 194 and highlights that Bastrop County's response was never supplemented. *See id.* R. 194.2(e), (f). Similarly, Montie observes that when she sent notice of her intent to depose Bastrop County, Bastrop County did not designate Littleton as its witness even though Montie informed Bastrop County that one of the matters that would be discussed during the deposition was "[t]he extent to which Bastrop County animal control officers are authorized to enforce law, ordinances, and regulations prohibiting animal cruelty." *See id.* R. 199.2(b) (requiring organization named in notice to "designate one or more individuals to testify on its behalf and set forth, for each individual designated, the matters on which the individual will testify"). Furthermore, although Montie's live pleadings prior to the remand did not present her theory that she made a report to Mollaghan, Montie insists that Bastrop County was on notice of this claim because she stated in response to Bastrop County's interrogatories that she informed Mollaghan about various instances of alleged animal cruelty and that she believed Bastrop County Animal Control was an appropriate law-enforcement authority to

6

make the report to. Similarly, Montie notes that in her sworn deposition she stated that she reported the unlawful treatment of animals to Mollaghan.

In light of the preceding, Montie urges that the district court should have granted her motion to strike Littleton's affidavit under Rule of Civil Procedure 193.6. *See id.* R. 193.6. Under that Rule, "[a] party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed, or offer the testimony of a witness (other than a named party) who was not timely identified" unless the court finds that there "was good cause for the failure to timely make, amend, or supplement the discovery response" or that the failure "will not unfairly surprise or unfairly prejudice the other parties." *Id.* R. 193.6(a). Further, the burden of showing good cause or the absence of unfair surprise or prejudice is on the party seeking to introduce the witness or evidence. *Id.* R. 193.6(b); *see also Alvarado v. Farah Mfg. Co.*, 830 S.W.2d 911, 914 (Tex. 1992) (providing that "[t]he rule is mandatory, and its sole sanction—exclusion of evidence—is automatic, unless there is good cause to excuse its imposition"). "A finding of good cause or lack of unfair surprise or unfair prejudice must be supported by the record." *Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637, at *10 (Tex. App.—Austin Nov. 27, 2013, pet. denied) (mem. op.). In this case, the district court's order does not specify whether it found that good cause was present or that there was no unfair surprise or unfair prejudice, but appellate courts "must uphold a trial court's ruling on [admissibility of evidence] on any legal theory on which it could have properly relied." *See id.* In addition, "[t]he trial court has discretion to determine whether the offering party has met its burden of showing good cause to admit evidence that was not timely identified." *Id.* "A trial court 'abuses

7

its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law,'" *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002) (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)), or if it acts "without reference to any guiding principle," *Texas Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990).[1]

In its response to Montie's motion to strike and during the hearing on the motion to strike, Bastrop County emphasized the fact that Montie's prior petition asserted that she made reports to two County Commissioners but did not contend that she made any report to Mollaghan. Further, Bastrop County noted that this Court previously determined that the County Commissioners were not appropriate law-enforcement authorities and reversed the district court's decision denying Bastrop County's prior plea to the jurisdiction but remanded the case to the district court to allow Montie an opportunity to replead. Finally, Bastrop County highlights that it submitted Littleton's affidavit after Montie filed her amended petition asserting that she made a report to Mollaghan and that Mollaghan was an appropriate law-enforcement authority with whom to file a report.

Given our ultimate determination that Montie's petition affirmatively pleaded facts asserting that she was fired from her job in violation of the Act and that the evidence submitted

---

[1] We note that one of our sister courts of appeals has questioned whether the Rules of Civil Procedure governing the disclosure of information pertaining to an opposing party's expert witnesses apply to expert testimony in a plea-to-the-jurisdiction context. *See Schronk v. City of Burleson*, 387 S.W.3d 692 (Tex. App.—Waco 2009, pet. denied). In particular, our sister court explained that although "an expert's affidavit is not admissible summary-judgment evidence if the expert has not been properly designated under Rule 194.2," "we are unaware of any decision applying this same principle in the context of a plea to the jurisdiction, and we decline to do so." *Id.* at 707. Given our ultimate resolution, we need not decide whether the consequences for failing to timely "make, amend, or supplement a discovery response" outlined above apply in the context of a plea to the jurisdiction. *See* Tex. R. Civ. P. 193.6(a).

demonstrates that there are fact questions regarding whether Montie's termination violated the Act even if the district court considered the affidavit attached to Bastrop County's plea to the jurisdiction, we need not address in this appeal whether the district court abused its discretion by denying Montie's motion to strike and will assume for the sake of argument that the affidavit was properly considered. *See* Tex. R. App. P. 47.1 (noting that opinions need only address issues necessary to disposition of appeal).

**Plea to the Jurisdiction**

In her first and third issues on appeal, Montie contends that the district court erred by granting Bastrop County's plea to the jurisdiction. In her first issue, Montie asserts that the district court erred because she alleged sufficient facts in her petition to establish that jurisdiction over the case exists by asserting that each of the essential elements of a Whistleblower claim were met. In her third issue, Montie contends that even if the district court properly considered Littleton's affidavit, there were fact issues precluding the district court from granting Bastrop County's plea to the jurisdiction. We will address those issues together.

*Governing Law*

As mentioned above, this case was filed under the Act, "which waives sovereign immunity from suit for retaliatory discharge under certain circumstances," *Texas Comm'n on Envtl. Quality v. Resendez*, 450 S.W.3d 520, 521 (Tex. 2014) (citing Tex. Gov't Code § 554.0035), and "protects public employees who in good faith report violations of law to an appropriate law-enforcement authority," *Texas Dep't of Human Servs. v. Okoli*, 440 S.W.3d 611, 612 (Tex.

9

2014).  Stated differently, the Act "prohibits a state or local governmental entity from taking adverse personnel action against 'a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law[-]enforcement authority.'"  *Id.* at 613-14 (quoting Tex. Gov't Code § 554.002(a)).  "Because the Act is remedial in nature, it should be liberally construed to effect its purpose."  *City of Houston v. Levingston*, 221 S.W.3d 204, 218 (Tex. App.—Houston [1st Dist.] 2006, no pet.).  "[I]ts legislative purpose" is "to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing."  *University of Houston v. Barth*, 178 S.W.3d 157, 162 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  The elements of a Whistleblower claim "are jurisdictional and may not be waived."  *University of Houston v. Barth*, 403 S.W.3d 851, 854 (Tex. 2013) (per curiam).  Under the Act, a plaintiff is required to prove the following: "(1) that he was a public employee, (2) that he reported a violation of law in good faith, (3) that the violation of law reported was committed by his employing governmental entity or another public employee, (4) that the report was made to an appropriate law enforcement authority, and (5) that his employing governmental entity took an adverse personnel action against him because of the report."  *Texas Dep't of Criminal Justice v. McElyea*, 239 S.W.3d 842, 849 (Tex. App.—Austin 2007, pet. denied); *see* Tex. Gov't Code § 554.002(a).

    In its current version, the Act provides that a report is made to an "appropriate law enforcement authority . . . if the authority is part of a state or local governmental entity or the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal

10

law." Tex. Gov't Code § 554.002(b). To satisfy the above requirement, a plaintiff seeking protection under the Act "must prove that the report was made to an appropriate law-enforcement authority, or that the employee had a good-faith belief that it was." *Okoli*, 440 S.W.3d at 614. "An employee's belief is in good faith if: (1) the employee believed the governmental entity qualified, and (2) the employee's belief was reasonable in light of the employee's training and experience." *Id.* The "second element is an objective one," and the employee only receives protection under the Act "if a reasonably prudent employee in similar circumstances would have believed the governmental entity to which he reported a violation of law was an appropriate law-enforcement authority." *Id.*; *see also Resendez*, 450 S.W.3d at 522 (explaining that claimant must satisfy both subjective and objective requirements); *University of Tex. Sw. Med. Ctr. at Dallas v. Gentilello*, 398 S.W.3d 680, 689 (Tex. 2013) (stating that Act "restricts 'law-enforcement authority' to its commonly understood meaning"). The good-faith inquiry "turns on more than an employee's *personal* belief, however strongly felt or sincerely held." *Gentilello*, 398 S.W.3d at 683.

*Public Employees and Alleged Violation Committed by Mollaghan*

When she filed her petition, Montie alleged that the animal shelter was a governmental entity, that she worked for the shelter as an employee, that Mollaghan was the director of the shelter, and that Mollaghan violated section 42.092 of the Penal Code and section 8.1 of the Order when carrying out her duties as director. In its plea, Bastrop County did not dispute Montie's allegations that the shelter was a governmental entity, that Montie worked for the shelter as a public employee, that Mollaghan was a public employee, or that Mollaghan was the person who Montie alleged committed the misconduct at issue. *See* Tex. Gov't Code § 554.001(2) (providing that local

11

governmental entities include counties), (4) (defining "'[p]ublic employee'" as "an employee . . . who is paid to perform services for a state or local governmental entity"). In addition, Bastrop County did not present any evidence contradicting any of those allegations. Accordingly, we must conclude that Montie's petition affirmatively pleaded facts asserting that she and Mollaghan were public employees and that Mollaghan was the individual who violated the criminal laws at issue.

*Report Concerning Violation of Law*

In her petition, Montie alleged that Mollaghan violated provisions of the Penal Code and the Order and that she reported these violations to Mollaghan. When Bastrop County challenged in its plea whether a report regarding violations of law had been made, it first questioned whether Montie's pleadings properly alleged violations of law. In presenting her Whistleblower claim, Montie relied on section 42.092 of the Penal Code and section 8.1 of the Order. Section 42.092 provides, in part, that a person commits an offense if he "intentionally, knowingly, or recklessly" "tortures an animal" or "fails unreasonably to provide necessary food, water, care, or shelter for an animal in the person's custody." Tex. Penal Code § 42.092(b)(1), (3). Section 8.1 directly invokes section 42.092 and similarly provides, in part, as follows: "No owner shall fail to provide an animal in his/her care with sufficient good and wholesome food and water, with the water available to the animal 24/7, adequate shelter and protection from weather, veterinary care when needed to prevent suffering, grooming when lack thereof would adversely affect the health of the animal, and with humane care and treatment." Order § 8.1. When making her claim, Montie alleged that Mollaghan's failure to timely approve euthanasia requests for animals led to overcrowding and led "to the unreasonable suffering of several mortally injured and/or terminally ill animals."

12

Independent of those assertions, Montie also alleged that Mollaghan failed to provide proper food and water to the animals at the shelter and failed "to provide clean and sanitary accommodations for the animals" at the shelter. In light of the invoked governing law, we must conclude that Montie has alleged violations of law.

Next, Bastrop County seemed to suggest that no qualifying report was made because Montie alleged that she orally informed Mollaghan of her concerns but did not allege that she submitted a written report. However, we have been unable to find support for the assertion that a report must be written to qualify for protection in either the language of the Act or case authority interpreting the Act. Moreover, we note that construing the Act in the manner suggested by Bastrop County would seem inconsistent with the public policy of encouraging public employees to report violations of law committed by governmental actors by shielding the employees from retaliation for making the reports because that construction would allow for and perhaps even encourage retaliatory practices before a complaint has been memorialized in written form. *Cf. Levingston*, 221 S.W.3d at 218 (explaining that Act is "designed to enhance openness in government and to compel the government's compliance with law by protecting those who inform authorities of wrongdoing").

Finally, Bastrop County suggested that the evidence that it attached to its plea established that the report was not made in good faith because the evidence showed that the true origin of the conflict in this case was a protracted disagreement between Montie and Mollaghan that was unrelated to any of the misconduct asserted in Montie's petition and instead was based on Montie's disapproval of the way that Mollaghan was running the shelter. As support for this proposition, Bastrop County referred to the depositions of Charlotte Collins, who was the human

13

resources officer for the shelter, and of County Commissioner Gary Snowden. In their depositions, they recalled several complaints that Montie made to them regarding Mollaghan's management of the shelter that were unrelated to any alleged acts of animal cruelty.

However, Commissioner Snowden also explained in his deposition that Montie made several complaints to him that are similar to the ones at issue in this case, including that the shelter animals were not being properly cared for, that the kennels were not being cleaned, and that the animals were not being adequately fed. Further, although the evidence presented by Bastrop County indicates that Montie had a disagreement with Mollaghan that was separate from any alleged violation of the Penal Code or the Order, "[t]he fact that an employee harbors malice toward an individual should not negate the Whistleblower Act's protection if the employee's report of a violation of law was honestly believed and objectively reasonable given the employee's training and experience." *Wichita Cty. v. Hart*, 917 S.W.2d 779, 786 (Tex. 1996). To the extent that Bastrop County asserts that Montie's testimony that she made reports to Mollaghan should not be credited in light of the other evidence, resolution of that question is in the province of the factfinder. Moreover, Montie asserted in her petition that she made the report to Mollaghan based on her observations while working at the shelter, and Montie explained in her deposition that she had experience identifying animal cruelty and enforcing laws prohibiting it because she previously issued citations for animal cruelty in her prior employment. In addition, Bastrop County did not challenge or present evidence contradicting Montie's assertion that she informed Mollaghan about the unlawful conduct that forms the basis for her Whistleblower case.

14

In light of the preceding, we must conclude that Montie's petition affirmatively pleaded facts asserting that Montie reported violations in good faith and that nothing in the evidence presented by Bastrop County conclusively negated this element of a Whistleblower claim.

*Appropriate Law-Enforcement Authority*

In her petition, Montie alleged that Mollaghan was an appropriate law-enforcement authority and that she had a good-faith belief that Mollaghan was an appropriate law-enforcement authority because, as the director for the shelter, Mollaghan was the supervisor of all of Bastrop County's animal-control officers and because animal-control officers are charged with enforcing animal-cruelty laws.

In its plea and in the primary focus of its appellate briefing, Bastrop County argues that Mollaghan was not an appropriate law-enforcement authority and that Montie could not have had a good-faith belief that Mollaghan was an appropriate authority.[2] First, Bastrop County asserts that Montie's making a report to Mollaghan was not a report to an appropriate authority because courts have held that reports to supervisors do not qualify and because even under Montie's allegations, Mollaghan would have had to order one of the animal-control officers to issue a citation. Specifically, Bastrop County insists that Montie's contention that Mollaghan was an appropriate authority "lacks logic and fails to meet the necessary prerequisites of reporting to an appropriate law enforcement agency" because it would require Mollaghan to order a "subordinate animal control

_____

[2] When discussing good faith, Bastrop County also noted in its plea that Montie admitted in her deposition that she did not make a report to anyone in the Sheriff's Department or the District Attorney's Office regarding her concerns.

officer [to] issue[] citations to herself for animal cruelty." As support for these propositions, Bastrop County primarily refers to the following cases in which the supreme court determined that a report made to an employee's supervisor did not qualify for protection: *Texas Department of Human Services v. Okoli*, 440 S.W.3d 611 (Tex. 2014); *State v. Lueck*, 290 S.W.3d 876 (Tex. 2009); *Texas Department of Transportation v. Needham*, 82 S.W.3d 314 (Tex. 2002). However, we believe that those cases are distinguishable from the circumstances presented here.

In *Okoli*, Okoli worked for the Department of Human Services, which "was charged with administering welfare programs." 440 S.W.3d at 612. Okoli believed that his supervisor was falsifying documents, informed his supervisor of his concerns, and later made those same allegations to individuals "even higher up the chain of command." *Id.* at 613. After his employment was terminated, Okoli filed a claim under the Act "alleging that he was terminated for reporting that his supervisor falsified dates and documents," and the Department filed a plea to the jurisdiction asserting that Okoli did not make a report to an appropriate law-enforcement authority. *Id.* Ultimately, the supreme court determined that Okoli had not made a report to an appropriate law-enforcement authority and could not have had good-faith belief that he had done so. *Id.* at 617. In its analysis, the court relied on the fact that the memorandum that the Department gave to its employees regarding how to report wrongdoing specified that violations of the Penal Code would be referred to the Department's Office of Inspector General for possible prosecution. *Id.* at 612, 614; *see* Tex. Gov't Code § 531.102(a) (specifying that Office of Inspector General is responsible "for the prevention, detection, audit, inspection, review, and investigation of fraud, waste, and abuse in the provision and delivery of all health and human services in the state" and for "enforcement of

16

state law relating to the provision of those services"). Further, the court explained that when, as in that case, "an employee reports wrongdoing internally with the knowledge that the report will have to be forwarded elsewhere for regulation, enforcement, investigation, or prosecution, then the employee is not reporting '*to* an appropriate law[-]enforcement authority.'" *Okoli*, 440 S.W.3d at 615 (quoting Tex. Gov't Code § 554.002) (emphasis added in *Okoli*).

The court reached a similar result in *Lueck*. In that case, Lueck worked for the Department of Transportation and sent an email to his supervisor regarding potential consequences if a private vendor breached its contract with the Department because the Department did not pay the vendor approximately $350,000, including the possibility that the Department will not be in compliance with various state and federal standards for "collecting, analyzing, and reporting traffic data." 290 S.W.3d at 879. After Lueck's supervisor confirmed that the Department would not pay the disputed charge, the Department fired Lueck, and Lueck sued the Department and alleged that his email constituted a report of a violation of law to an appropriate law-enforcement authority. *Id.* When determining that Lueck's supervisor was not an appropriate law-enforcement authority, the court explained that as the head of a division within the Department, Lueck's supervisor "could neither regulate nor enforce the" federal and state regulatory reporting requirements that Lueck asserted might have been violated if the vendor breached its contract with the State. *Id.* at 885. Moreover, the court emphasized that "Lueck's e-mail report indicates that he knew [his supervisor] was not the proper authority within [the Department] to regulate the reported violations because he recommended that [his supervisor] have his email 'readily available' when discussing the implications . . . with other [Department] divisions." *Id.* at 886. Accordingly, the court determined

17

that the email "conclusively establishes that Lueck could not have formed a good-faith belief that [his supervisor] was authorized to enforce such violations." *Id.*

In *Needham*, the supreme court made a similar ruling. Specifically, the court determined that a report to Needham's supervisor at the Department of Transportation did not constitute a report to an appropriate law-enforcement authority and that there was "no evidence to support a finding that Needham had a good faith belief that [the Department] was an appropriate law enforcement authority." 82 S.W.3d at 315. Needham worked for the information-systems division of the Department and informed his supervisor and other employees that he suspected that one of his co-workers had committed the offense of driving while intoxicated during a business trip. *Id.* at 315-16. After he made the reports, he was demoted, and he sued the Department. *Id.* at 317. When concluding that the Department was not an appropriate law-enforcement authority, the court explained that the Department does not have the "authority to regulate under or enforce [] Texas's driving while intoxicated laws" or "to investigate or prosecute these criminal laws" and further explained that, "[a]t most, [the Department] has authority to regulate and investigate its employees' conduct only to carry out its internal disciplinary process procedures." *Id.* at 320. Moreover, the court rejected the idea that the "'appropriate law enforcement authority' definition includes an employer's ability to discipline an employee for allegedly violating the law." *Id.* at 321. When determining that there was "no evidence to support a finding that Needham had a good faith belief that [the Department] was an appropriate law enforcement authority under the Whistleblower Act to report a co-worker's drunk driving," the court emphasized that "the only evidence Needham relies on to support that he could have subjectively or objectively believed he was reporting to the

18

appropriate law enforcement authority is [the Department]'s disciplinary process, his participation therein, and his belief that [the Department] could forward information to another entity to prosecute a drunk driving allegation." *Id.*

Although those cases and the current one involve reports made to a supervisor, the supreme court has specifically declined "to say that no internal report could ever merit protection under the Act." *Okoli*, 440 S.W.3d at 616. In fact, the supreme court has provided examples of when an internal report would warrant protection. *See Gentilello*, 398 S.W.3d at 686. Specifically, the supreme court has explained that "[a] police department employee could retain the protections of the Whistleblower Act if she reported that her partner is dealing narcotics to her supervisor in the narcotics or internal affairs division. In such a situation, the employee works for an entity with authority to investigate violations of drug laws committed by the citizenry at large." *Id.* Similarly, the supreme court has related that the Act's requirements will be satisfied by a report "made to (1) an individual person who possesses the law-enforcement powers specified under the Act, or (2) someone who, like a police-intake clerk, works for a governmental arm specifically charged with exercising such powers." *Okoli*, 440 S.W.3d at 617. Stated differently, the supreme court has explained that the employee to whom a report is made must work for an entity with "outward-looking law-enforcement authority." *Id.*

Moreover, after those cases were decided, the supreme court considered a situation more similar to the allegations presented here. *See McMillen v. Texas Health & Human Servs. Comm'n*, 485 S.W.3d 427 (Tex. 2016). In that case, McMillen "served as Deputy Counsel for the [Texas Health and Human Services] Commission's Office of the Inspector General (OIG)"; prepared a memorandum regarding "the legality of the Commission's practice of obtaining payments from

19

certain recipients of Medicaid benefits"; gave the memorandum to Karen Nelson, who was "a Deputy Inspector General for the Commission"; and made another report regarding the practice to "the head of the OIG Internal Affairs Division" and "the Commission's Executive Commissioner." *Id.* at 428. Several months later, McMillen was fired. *Id.* Ultimately, the supreme court determined that McMillen made a report to an appropriate law-enforcement authority because the Commission, through the OIG, was responsible for the investigation of fraud pertaining to health and human services and for the enforcement of laws relating to the provision of those types of services and because the Commission's executive commissioner is charged with ensuring that Medicaid complies with the laws that McMillen asserts were being violated. *Id.* at 430 (discussing Tex. Gov't Code § 531.102(a)). Further, the court explained that "the OIG . . . has outward-looking powers" and "has authority regarding those who handle funds contrary to the laws the OIG is charged with enforcing, whether or not the violators are within the Commission." *Id.*

The allegations at issue in this case seem to fall under the type of report to a supervisor that the supreme court has stated will be entitled to protection under the Act. Specifically, Montie has alleged that she made the report to Mollaghan, that Mollaghan was the director for the animal shelter, and that Mollaghan was the supervisor for animal-control officers who investigate violations of and enforce the animal-cruelty laws that Montie contends were violated. Although Bastrop County asserts that Montie's own allegations establish that Mollaghan would have had to pass the complaint to one of her subordinate animal-control officers for investigative purposes and for possible citations, the hypothetical examples presented by the supreme court indicate that a report to an employee who does not have law-enforcement powers but works for an entity with outward-

20

looking enforcement powers can qualify for protection. Similarly, the language of the governing statutes does not appear to require that the individual to whom a report is made actually have the authority to investigate or enforce the violations at issue; on the contrary, section 554.002 provides that "a report is made to an appropriate law enforcement authority *if the authority is a part of a state or local governmental entity* . . . that the employee in good faith believes is authorized to" "regulate under or enforce the law alleged to be violated in the report" or "investigate or prosecute a violation of criminal law." Tex. Gov't Code § 554.002(b). Moreover, this case does not present the type of reporting that the supreme court has explained will not qualify for protection in which a report is made to an employee of an entity that has no ability to investigate or enforce the alleged criminal misconduct because Montie has alleged that the shelter has investigatory and enforcement powers over animal-cruelty violations and that Mollaghan has supervisory control over the individuals to whom the claim would be transferred to for investigation and enforcement. Further, unlike the circumstances in *Okoli*, *Lueck*, and *Needham*, there is nothing indicating that Montie had been informed before making the report that if an employee reports a criminal violation, that report will be sent to another governmental agency or division for investigative and enforcement purposes or that Montie made some type of admission that she was aware that Mollaghan was not the appropriate authority to report the claim to.

Our conclusion that Montie has alleged a report to a supervisor that might ultimately be deemed entitled to protection is further buttressed by a recent decision by one of our sister courts of appeals. *See Levingston*, 221 S.W.3d 204. In that case, Dr. Sam Levingston worked as the "senior veterinarian [for the] Bureau of Animal Regulation and Care ('BARC'), a division of the

21

City's Department of Health and Human Services" that had law-enforcement powers over issues concerning animals in the City. *Id.* at 210. After observing "'a number of things,'" including animals not being properly fed or provided with water, "occurring at BARC's facility that 'rose to the level of animal abuse,'" Levingston reported the "matters to the attention of John Nix, the Division Manager of BARC," and later explained that he made the report to Nix because BARC is the authority to which reports of the inhumane treatment of animals should be made. *Id.* at 210-11. Following his making a report, Levingston was fired. *Id.* at 212. On appeal, the appellate court observed that most of the allegations made by Levingston "constituted violations of criminal law," including the Penal Code, the Health and Safety Code, and the City of Houston Code, and concluded that there was "legally sufficient evidence to support the jury's implied findings that Levingston, in good faith, believed that the conduct that he reported to Nix was a violation of criminal law and also implicated the regulatory and enforcement function of BARC and that his belief was reasonable in light of his training and experience." *Id.* at 221-22. Further, the court concluded that BARC had the authority to investigate or enforce violations of section 42.09 of the Penal Code, of relevant provisions of the City of Houston Code, and of provisions of the Health and Safety Code pertaining to the impoundment of animals by governmental entities, that "Nix's supervisory position over all of BARC" put him "in the best position to receive such reports on behalf of BARC," and that the evidence was "legally sufficient to support the jury's implied findings that Levingston, in good faith, believed that BARC was an appropriate law enforcement authority to which to report the above pertinent violations of the City Code, the Texas Penal Code, and the Health and Safety Code and that his belief was reasonable in light of his training and experience." *Id.* at 224-25.

In its next set of arguments, Bastrop County asserts that Mollaghan was not an appropriate law-enforcement authority and that Montie could not have had a good-faith belief that Mollaghan was an appropriate authority because Mollaghan was the person who committed the alleged misconduct at issue. In other words, Bastrop County urges that a person who commits misconduct could never be the "appropriate" person to report that misconduct to.

At first blush, Bastrop County's assertions have some common-sense appeal in that they question the likelihood that reporting misconduct to the person committing it will result in an investigation or in the enforcement of the laws prohibiting the behavior. *See* Webster's Third New Int'l Dictionary 106 (2002) (defining "appropriate" as "specifically suitable: FIT, PROPER"). However, we have been unable to find anything in the language of the governing statutes or the case law interpreting those statutes that supports Bastrop County's construction of the term "appropriate law-enforcement authority." On the contrary, the statutes provide and recent supreme court cases explain that a determination on the appropriateness of an authority is made by considering whether the authority has the *ability* to regulate or enforce the law at issue or to investigate or prosecute criminal violations. *See* Tex. Gov't Code § 554.002(b); *Okoli*, 440 S.W.3d at 615; *Lueck*, 290 S.W.3d at 885; *Needham*, 82 S.W.3d at 320; *see also Hunt Cty. Cmty. Supervision & Corr. Dep't v. Gaston*, 451 S.W.3d 410, 421 (Tex. App.—Austin 2014, pet. denied) (explaining that definition for appropriate law-enforcement authority "focuses on: (1) the claimant's 'good faith' belief regarding (2) the attributes of the governmental entity that the reported-to 'authority' is 'part of,' as opposed to 'the specific individual to whom the report is made'" (quoting *Robertson Cty. v. Wymola*, 17 S.W.3d 334, 340 (Tex. App.—Austin 2000, pet. denied))); *Travis Cty. v. Colunga*, 753 S.W.2d 716, 721 (Tex. App.—Austin 1988, writ denied) (on reh'g) (stating that former version of Act did "not require that the violation

23

of law be reported to 'the most appropriate' law enforcement authority" and instead only required report to appropriate law-enforcement authority). Moreover, the fact that a report regarding alleged wrongdoing is made directly to the person who allegedly committed the wrongdoing is not inconsistent with the Act's purpose of compelling compliance with the law by governmental actors and might, in some instances, more quickly result in the cessation of the conduct than would a report to a separate entity. *See Barth*, 178 S.W.3d at 162.

Finally, Bastrop County contends that the affidavit by Littleton, which was attached to Bastrop County's plea and which was discussed above, conclusively established that Mollaghan was not an appropriate law-enforcement authority and that Montie could not have had a good-faith belief that Mollaghan was an appropriate law-enforcement authority because Littleton explained that allegations of animal cruelty are investigated by an entity other than the shelter and that Mollaghan does not personally have the authority to investigate or enforce the violations at issue.

Previously, we explained that the governing statutes and case law do not state that the individual to whom a report is made must personally have the authority to investigate or enforce the violations allegedly committed. *See* Tex. Gov't Code § 554.002(b); *Okoli*, 440 S.W.3d at 617. Accordingly, in light of Montie's allegations that the shelter has the authority to investigate and enforce the laws at issue, it is not entirely clear that Littleton's testimony establishing that Mollaghan did not have investigative or enforcement powers herself could, on its own, conclusively establish that Mollaghan was not an appropriate law-enforcement authority with whom a report could be made. *Cf. Okoli*, 440 S.W.3d at 617 (discussing how individual might be appropriate law-enforcement authority even without law-enforcement powers if person works for agency with those types of powers).

24

In addition, we note that in response to Bastrop County's plea to the jurisdiction, Montie pointed to various depositions, including her own, that were attached to Bastrop County's plea to the jurisdiction and asserts that those depositions contradict Littleton's. First, Montie refers to the depositions from two members of the Commissioners' Court. Although neither of the County Commissioners stated that the director could herself issue citations, investigate alleged criminal activities, or enforce any laws, they did explain that the director of the shelter manages animal-control officers and that those officers have the authority to issue citations for animal abuse or neglect.[3] Next, Montie refers to the deposition from Collins, who explained that although she did not know if animal-control officers have the authority to issue citations or arrest people, their jobs are investigatory in nature. Further, Collins related that the shelter used to be part of the Sheriff's Department for Bastrop County before being transferred from the Department and becoming "a general county department."[4]

Finally, Montie points to her own deposition in which she stated that she reported her concerns to Mollaghan because Mollaghan "was in charge of animal control, she would be the one to report animal cruelty." Moreover, Montie explained that at the time that she was hired, the animal

[3] During his deposition, County Judge Paul Pape explained that he believed that an appropriate law-enforcement authority in this case would have been a police officer, the sheriff, or the district attorney and further stated that he did not think the director of the animal shelter qualified. However, when making his statements regarding the director, Judge Pape explained that his statements were based on the assumption that it would not "be an effective thing to file that complaint with that person against whom you were complaining" as opposed to a factual basis for concluding that Mollaghan did not suffice as an "appropriate law enforcement authority."

[4] Prior to the first appeal, Montie urged that she also reported the criminal behavior to Collins. In her briefs during the first appeal and in this appeal, Montie does not argue that a human-resources coordinator like Collins could qualify as a law-enforcement authority.

25

shelter was part of the Sheriff's Department but admitted that the shelter had been reorganized and transferred away from the control of the Sheriff's Department. Furthermore, as support for the idea that Mollaghan had law-enforcement authority, Montie notes her own testimony regarding her responsibilities at various animal-related jobs. In particular, Montie explained that although she did not issue a citation while working as a manager for the shelter and did not know if issuing citations was part of her job responsibilities as a manager, she related that she had issued citations for animal cruelty in the past while working as an animal-control officer and that during her employment as a manager, she supervised individuals who had the authority to issue citations for animal cruelty.

In light of the preceding, we must conclude that Montie's petition affirmatively pleaded facts asserting that Mollaghan was an appropriate law-enforcement authority or that Montie had a good-faith belief that Mollaghan was and that the evidence relied on by Bastrop County and Montie demonstrates that there are fact questions regarding whether Mollaghan was in fact an appropriate law-enforcement authority and whether Montie had a good-faith belief that Mollaghan was an appropriate law-enforcement authority.

*Adverse Personnel Action*

Regarding the final element of a Whistleblower claim, Montie alleged in her petition that she was fired within two months of reporting the violations to Mollaghan and that her termination was the result of her making the report regarding Mollaghan's misconduct. Given the timing of her termination, Montie urged that she was entitled to a statutory presumption contained in section 554.004 of the Government Code, which provides that if an employee is terminated less than 90 days after a report is made, the termination "is presumed, subject to rebuttal, to be because

the employee made the report." Tex. Gov't Code § 554.004(a). Alternatively, Montie urged that she provided evidence contradicting Bastrop County's assertion that she was let go from her position in order to create two lower-paying jobs. Specifically, she referred to attachments to her response to Bastrop County's plea to the jurisdiction showing that her salary as a manager was the same as the salary for one of the new positions.

In its plea, Bastrop County did not dispute the alleged timing between when Montie made a report to Mollaghan and when Montie was fired and did not assert that Montie was not entitled to the statutory presumption that her termination was the result of her making the report. However, Bastrop County did assert in its plea that the district court did not have jurisdiction over the case because Montie "did not suffer retaliation as a result of making a qualified report." As support for this, Bastrop County pointed to the deposition from Collins in which she detailed the complaints that Montie made about Mollaghan, explained that Montie was hired in August 2012 and fired in December 2012, and related that as a new hire, Montie was a "probationary" employee. Further, in her deposition, Collins also explained that Montie's employment position was eliminated when Mollaghan elected to remove the manager position and split that money between the following two new positions: an administrative assistant and a shelter coordinator.

In light of the preceding, including the statutory presumption, we must conclude that Montie's petition affirmatively pleaded facts asserting that she was fired from her manager position at the shelter as a result of filing a report with Mollaghan concerning Mollaghan's alleged misconduct and that the evidence relied on by Bastrop County and Montie demonstrates that there are fact questions regarding whether Montie was terminated as a consequence of filing the report.

27

For the reasons previously given, we sustain Montie's first and third issues on appeal.

## CONCLUSION

Having sustained Montie's first and third issues, we reverse the district court's order granting Bastrop County's plea to the jurisdiction and remand the case for further proceedings consistent with this opinion.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Field

Reversed and Remanded

Filed:   October 19, 2016