**AFFIRMED and Opinion Filed July 29, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-20-00265-CV**
_____

**CITY OF FORT WORTH, Appellant**

**V.**

**WILLIAM BIRCHETT, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-06941**

## MEMORANDUM OPINION

Before Justices Molberg, Reichek, and Nowell
Opinion by Justice Molberg

The City of Fort Worth appeals the trial court's order denying its plea to the jurisdiction on whistleblower claims brought by William Birchett, its former Senior Information Technology Solutions Manager. *See* TEX. GOV'T CODE §§ 554.001–.010. The City argues the trial court erred in denying its plea because Birchett did not initiate its grievance policy before filing suit, did not make a good faith report of the City's violations of law to appropriate law enforcement authorities, and was not terminated because of any such report. For the reasons discussed below, we affirm in this memorandum opinion. *See* TEX. R. APP. P. 47.4.

BACKGROUND[1]

Birchett is the City's former Senior Information Technology Solutions Manager – Cybersecurity. He began working for the City on May 15, 2017, and was terminated February 15, 2019. In this lawsuit, Birchett claims that, less than ninety days after he made good faith reports of the City's violation of law to appropriate law enforcement authorities, the City suspended him on January 2, 2019, and terminated him on February 15, 2019, in violation of the Texas Whistleblower Act (the Act). *See* TEX. GOV'T CODE §§ 554.001–.010.

The record includes a January 2, 2019 memorandum and a February 15, 2019 letter informing Birchett of these actions. Both communications were signed by Kevin Gunn, the City's Information Technology Solutions Director, who the City identifies as the person who made the decision to terminate Birchett. In addition to Gunn, the January 2, 2019 memorandum was also signed by Roger Wright, the Acting Department Director. The record also includes a December 20, 2018 report by the City's police chief, Joel Fitzgerald, Sr., Ph.D., which was issued shortly before the City placed Birchett on administrative leave and terminated him. Fitzgerald's report concerned a recent Criminal Justice Information Services (CJIS) compliance audit conducted by the Texas Department of Public Safety (DPS). The January 2, 2019 memorandum placing Birchett on administrative leave refers to

---

[1] The facts are well-known to the parties, and we do not recite them here except as necessary "to advise the parties of the court's decision and the basic reasons for it." TEX. R. APP. P. 47.4.

–2–

Fitzgerald's report. Birchett claims Fitzgerald's report includes information he shared with Fitzgerald and other law enforcement officials in a December 19, 2018 meeting regarding the audit.

Generally, Birchett alleges that, less than ninety days before the City placed him on administrative leave and terminated him, he reported to Fitzgerald and to a DPS auditor, Oswald Enriquez, that the City was in violation of CJIS regulations promulgated under 28 U.S.C. § 534, including 28 C.F.R. § 20.21(f).[2]

---

[2] Among other things, 28 U.S.C. § 534 requires the United States Attorney General to "acquire, collect, classify, and preserve identification, criminal identification, crime, and other records" and "exchange such records and information with, and for the official use of, authorized officials of the Federal Government, including . . . the States . . . and penal and other institutions." The regulations contained at 28 C.F.R. part 20 require that, "Wherever criminal history record information is collected, stored, or disseminated, each State shall insure that [various] requirements are satisfied by security standards established by State legislation, or in the absence of such legislation, by regulations approved or issued by the Governor of the State [including that] [p]rocedures [be] instituted to assure that an individual or agency authorized direct access is responsible for (1) the physical security of criminal history record information under its control or in its custody and (2) the protection of such information from unauthorized access, disclosure or dissemination." 28 C.F.R. § 20.21(f). Any agency or individual violating subpart B of the regulations "shall be subject to a civil penalty . . . not to exceed $11,000[.]" The record indicates that the Texas Department of Public Safety "shall establish a system to, at least triennially audit all criminal justice and noncriminal justice agencies which have direct access to the state system in order to ensure compliance with agency and FBI CJIS policy and regulations."

As to Birchett's specific claims regarding these provisions, Birchett's original petition states, in part:

31. The Criminal Justice Information Act, codified as part of 28 U.S.C. § 534, is intended to "assure that criminal history record information wherever it appears is collated, stored, and disseminated in a manner to ensure the accuracy, completeness, currency, integrity, and security of such information and to protect individual privacy." 28 C.F.R. § 20.

32. Federal CJIS regulations require that computerized data must be properly secured to "prevent unauthorized access to such information." 28 C.F.R. § 20.21(f)(1).

33. Federal CJIS regulations further require that access to criminal history record information system facilities must be "restricted to authorized organizations and personnel," and that direct access to criminal history record information shall be available only to "authorized officers or employees of a criminal justice agency." 28 C.F.R. § 20.21(f). *See* Criminal Justice Information Act, codified as part of 28 U.S.C. § 534.

34. Birchett was aware that the City had previously failed CJIS audits by the State of Texas Department of Public Safety ("DPS") and by the FBI.

35. In 2013, the FBI found that the Fort Worth Police Department ("FWPD") was out of compliance with Federal CJIS regulations because the City used public facilities to transmit encrypted CJIS data. Alan Girton, one of Birchett's predecessors, was responsible for resolving the deficiency, and reported that the deficiency was resolved.

36. In 2015, the DPS found that the FWPD was in compliance with Federal CJIS regulations for "data at rest" and "data in motion." Girton was primarily responsible for presenting information regarding the City's compliance. Based on representations from Girton and other City officials, DPS approved the City's CJIS encryption techniques. As indicated more fully below, the City was not in compliance in 2015 because the City was required to have network architecture that included point-to-point encryption between network devices. It is unclear whether Girton knew that the City was not in compliance or simply did not understand the technological requirements. Regardless, the City represented to DPS that it was in compliance with Federal CJIS regulations when it was not.

37. In 2016, the FBI found that the Fort Worth Municipal Court was not in compliance with Federal CJIS regulations because the City did not use a secure connection between the City jail and the Southwest Municipal Court. The City was also cited for failure to have secure remote access. Girton reported that the City resolved the issues.

38. In 2016 and 2017, on information and belief, the City misrepresented to DPS that the City met all of the Federal CJIS regulations in response to DPS questionnaires when it did not.

39. In late November, 2018, Birchett was required to begin completing a DPS audit questionnaire used to determine whether the City was in compliance with 28 U.S.C. § 534 and 28 C.F.R. § 20.21. Birchett knew that if he responded truthfully to the DPS questionnaire, the City would fail the audit.

40. On November 19, 2018, Birchett provided responses to the DPS questionnaire, told the truth, and reported that the City was in violation of 28 U.S.C. § 534 and 28 C.F.R. § 20.21.

41. In his DPS questionnaire responses, Birchett reported that the City did not meet Federal CJIS regulations for keeping event logs for a minimum of one year; did not meet Federal CJIS regulations concerning the personnel who accessed CJIS data; did not have network architecture that allowed for point-to-point encryption from one network device to another network device as required by Federal regulations; did not have a policy addressing personally owned or publicly accessible computers as required by Federal regulations; did not employ personal identification numbers that met CJIS standards as required by Federal regulations; did not meet CJIS requirements for mobile devices as required by Federal regulations; did not meet Federal CJIS regulations for wireless protocols; did not meet Federal CJIS regulations that require mobile devices employ personal firewalls; and did not meet Federal CJIS regulations that require a written plan with special reporting procedures for mobile devices.

42. One of the most egregious violations that Birchett included in his whistleblower report was that the City knowingly and deliberately failed to comply with 28 C.F.R. § 20.21(f)(1) and Tex. Gov't Code Ann. § 552.108, which prohibited convicted felons and persons with other disqualifying criminal convictions from accessing CJIS data. Birchett had earlier reported to Gunn and Wright that the City permitted employees known to have felony convictions and other disqualifying criminal convictions to access confidential CJIS data. The City knowingly and deliberately allowed employees who were disqualified due to criminal convictions to have access to CJIS. Examples of employees who had either

temporary or permanent disqualifiers prohibiting access included Bret Belsher (Class B misdemeanor), Courtney Chadwick (Class B misdemeanor), Mark Deboer (Class A misdemeanor), Stephen Doss (Class A misdemeanor), Neaita Franklin (felony conviction), Virginia Gomez (felony conviction), Wyatt Smith (Class A misdemeanor), and Grant Stellmaker (felony conviction). Even though these employees had either temporary or permanent disqualifiers, the City improperly allowed them access to CJIS. When Birchett initially reported the unauthorized access to the City, CJIS access permissions were initially removed and the disqualified employees were physically moved such that they did not have access to CJIS computers. Within less than six months, however, DeBoer and Doss had their CJIS access restored. Birchett again reported the unauthorized access to the City, and permissions for DeBoer and Doss were again removed. DeBoer, however, retained access to CJIS due to so-called "nested permissions groups" that gave DeBoer, and possibly others, unauthorized access to CJIS records. Birchett presented a remediation plan to his immediate supervisor, Burke, that included automated tools to disentangle the nested permission groups. Birchett and Burke presented the plan to Gunn, who rejected it. Birchett and Burke then presented the plan to director Wright, who also rejected it. By refusing to revoke CJIS access privileges for DeBoer during a time that he was disqualified, the City intentionally violated 28 U.S.C. § 534, 28 C.F.R. § 20.21(f)(1) and Tex. Gov't Code Ann. § 552.108.

43. Another egregious violation that Birchett included in his whistleblower report was that the City did not comply with Federal CJIS regulations that the City maintain one year of log data identifying access to CJIS records. Federal CJIS regulations require that the City maintain log records that "clearly identify both the operator and the authorized receiving agency, clearly identify the requester and the secondary recipient and take the form of a unique identifier that shall remain unique to the individual requester and to the secondary recipient throughout the minimum one (1) year retention period." 28 C.F.R. § 20.21(f)(1). The City's Computer Aided Dispatch System complied with this requirement, but other City systems that also store CJIS data do not, such as the Police Department's Gang Operations Unit, Sex Offender Operations Unit, and other unit systems.

44. Another egregious violation that Birchett included in his whistleblower report was that the City used HTTPS website encryption instead of using point-to-point encryption for devices that access CJIS data. Federal CJIS Regulations require point-to-point encryption. 28 C.F.R. § 20.21(f)(1).

. . . .

73. On January 2, 2019, within 90 days of Birchett's November 19, 2018 whistleblower report, and the December 19, 2018, whistleblower report, Gunn and Wright made the executive decision to place Birchett on administrative leave.

. . . .

80. On February 15, 2019, within 90 days of Birchett's various whistleblower reports, Gunn, acting within the scope of his employment, and on behalf of the City, made the executive decision to terminate Birchett in retaliation for Birchett reporting the cybersecurity deficiencies and violations of law. This conduct violates the Texas Whistleblower Act, codified at Tex. Gov't Code § 554.001 Ann., et seq.

81. Because Birchett was first suspended and later terminated within 90 days of his whistleblower reports, the burden is on the City of Fort Worth to prove that Birchett was not suspended and terminated in retaliation for his reporting violations of law including, by way of example, and not limitation, 28 C.F.R. §20.21(f)(1), 45 C.F.R. § 164.502, Tex. Gov't Code Ann. § 552.108 and Tex. Bus. & Com. Code Ann. § 521.051 et seq.

The City denies this and generally maintains that Birchett was fired for poor performance,[3] which Birchett disputes.

Birchett filed this lawsuit on May 15, 2019, alleging the whistleblower claims discussed above. Shortly after doing so, he filed an emergency application for a temporary restraining order to prevent spoliation of evidence, and the trial court denied it. He sought relief in our court, which we denied.[4]

On June 21, 2019, the City filed its answer, denying Birchett's claims, asserting certain defenses, and raising two special exceptions not at issue here.

Roughly six months later, the City filed its plea to the jurisdiction. In its plea, the City argued that the court lacked subject matter jurisdiction because the jurisdictional facts established Birchett did not make good-faith reports of a violation of law to an appropriate law enforcement authority, was terminated for performance shortcomings, not reporting violations of law, and, after his termination, failed to properly initiate the City's whistleblower grievance procedure.

---

[3] The termination letter is signed by Gunn and begins with references to a meeting between Birchett, Gunn, and Roger Wright on January 2, 2019, placing Birchett on administrative leave and a meeting between Birchett, Gunn, Wright, and another individual on February 7, 2019, to discuss investigation findings. The letter concludes by stating, in part, "After carefully reviewing your comments and the information you presented during the meeting, the decision has been made to terminate your employment effective February 15, 2019."

[4] Birchett filed an original proceeding and an interlocutory appeal in this Court. We construed Birchett's original proceeding as a petition for writ of mandamus and a petition for writ of injunction and denied both petitions. *See In re Birchett*, No. 05-19-00600-CV, 2019 WL 2353450, at \*1 (Tex. App.—Dallas June 4, 2019, no pet.) (mem. op.). We denied his interlocutory appeal for want of jurisdiction. *See Birchett v. City of Fort Worth*, No. 05-19-00626-CV, 2019 WL 2575049, at \*1 (Tex. App.—Dallas June 24, 2019, no pet.) (mem. op.).

The City challenged the existence of jurisdictional facts, not Birchett's pleadings, and submitted an appendix with over 2,600 pages of evidence. The appendix included, but was not limited to, transcripts and exhibits from the depositions of Birchett and two other witnesses, Oswald Enriquez and Larry Lockley, Birchett's original petition, emails between the parties' counsel, an excerpt from the City's municipal code, the February 15, 2019 termination letter, and a March 15, 2019 letter from Birchett's counsel to the City's attorney. The March 15, 2019 letter was seven pages long, provided information about the City's alleged whistleblower violations at issue here, and stated the letter was to "serve as [Birchett's] administrative appeal under § 554.006 of the Texas Whistleblower Act."

Birchett opposed the City's plea and submitted a written response and appendix with over 700 pages of evidence of his own. Included in his appendix were the same March 15, 2019 letter mentioned above; a similar letter dated March 22, 2019, concerning another City employee, Ronald Burke;[5] affidavits from Birchett, Burke, and another witness, Rabiah Memon; excerpts from deposition transcripts of Birchett and Lockley; excerpts from a transcribed audio recording by Enriquez on December 19, 2018; various emails; and other correspondence, including Fitzgerald's December 20, 2018 memo and the January 2, 2019 memo placing Birchett on administrative leave.

---

[5] Burke was Birchett's direct supervisor.

On January 15, 2020, the trial court conducted a non-evidentiary hearing on the City's plea. After the hearing, both parties submitted additional briefing, and Birchett's post-hearing brief included additional evidence: an affidavit by his counsel, a May 15, 2019 letter from his counsel to the City's counsel, and various emails exchanged between the parties' counsel in April 2019.

The trial court denied the City's plea on February 5, 2020. This interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8).

GENERAL LEGAL STANDARDS

*Pleas to the Jurisdiction and Governmental Immunity*

A plea to the jurisdiction is a dilatory plea by which a party challenges the trial court's jurisdiction to determine the subject matter of the action. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2006). The purpose of the plea is to defeat a claim without regard to whether it has merit. *Id*.

We review a trial court's disposition of a party's plea to the jurisdiction de novo. *City of Houston v. Houston Mun. Emps. Pension Sys*., 549 S.W.3d 566, 575 (Tex. 2018) (citation omitted); *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002).

"Sovereign immunity—usually called governmental immunity when referring to political subdivisions—protects governmental entities against suits and legal liabilities." *Hillman v. Nueces Cty*., 579 S.W.3d 354, 357 (Tex. 2019) (citation

–8–

omitted).[6] Governmental "immunity from suit defeats a trial court's subject matter jurisdiction." *Id*. at 364 (quoting *Miranda*, 133 S.W.3d at 225). Governmental units are immune from suit unless the state consents. *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 n.15 (Tex. 2018) (citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 636 (Tex. 2012); *Miranda*, 133 S.W.2d at 224).

Immunity from suit may be asserted through a plea to the jurisdiction that challenges the pleadings, the existence of jurisdictional facts, or both. *Alamo Heights*, 544 S.W.3d at 770. Where a governmental unit challenges the existence of jurisdictional facts with supporting evidence, our standard of review mirrors that of a traditional summary judgment. *See Alamo Heights*, 544 S.W.3d at 771. Under this standard, a trial court must deny a plea to the jurisdiction if genuine issues of material fact exist on the issues raised in the plea. *Id*. Also, in deciding whether such fact issues exist, we take as true all evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in his favor. *Id*. However, we cannot disregard evidence necessary to show context or evidence and inferences unfavorable to the non-movant if reasonable jurors could not. *Id*.

*Texas Whistleblower Act*

The Texas Whistleblower Act contains an immunity waiver which states that "[a] public employee who alleges a violation of this chapter may sue the employing

---

[6] Only immunity from suit, not immunity from liability, implicates a trial court's jurisdiction. *See Hillman*, 579 S.W.3d at 357 (citing *State v. Lueck*, 290 S.W.3d 876, 880 (Tex. 2009)).

state or local governmental entity for the relief provided by this chapter," and "[s]overeign immunity is waived and abolished to the extent of liability for the relief allowed under this chapter." TEX. GOV'T CODE § 554.0035.

The Act "provides a general remedy for retaliation based on the report of any violation of law" and "is a broad remedial measure intended to encourage disclosure of governmental malfeasance and corruption." *City of Waco v. Lopez*, 259 S.W.3d 147, 154 (Tex. 2008) (citing TEX. GOV'T CODE § 554.002; *Stinnett v. Williamson Cty. Sheriff's Dep't*, 858 S.W.2d 573, 575 (Tex. App.—Austin 1993, writ denied)). Its underlying purposes are twofold: (1) to enhance open government by protecting public employees from retaliation by their employers when an employee reports a violation of the law in good faith, and (2) to secure lawful conduct by those who direct and conduct the affairs of government. *Herrera v. Dallas Indep. Sch. Dist.*, 609 S.W.3d 579, 588 n.15 (Tex. App.—Dallas 2020, pet. filed) (citation omitted).

Under the Act, state or local governmental entities "may not suspend or terminate the employment of, or take other adverse personnel action against, a public employee who in good faith reports a violation of law by the employing governmental entity or another public employee to an appropriate law enforcement authority." *Id*. § 554.002(a). Whether the conduct a public employee reports constitutes a violation of law is a question of law. *See Guillaume v. City of Greenville*, 247 S.W.3d 457, 461–62 (Tex. App.—Dallas 2008, no pet.) (citation omitted).

The Act defines "law" as a state or federal statute, an ordinance of a local governmental entity, or a rule adopted under a statute or ordinance. *Id*. § 554.001(1). The phrase "reports a violation of the law" has been interpreted as including "any disclosure of information regarding a public servant's employer tending to directly or circumstantially prove the substance of a violation of criminal or civil law, the State or Federal Constitution, statutes, administrative rules or regulations." *Llanes v. Corpus Christi Indep. Sch. Dist*., 64 S.W.3d 638, 642 (Tex. App.—Corpus Christi–Edinburg 2001, pet. denied) (citation omitted); *see Galveston Cty. v. Quiroga*, No. 14-18-00648-CV, 2020 WL 62504, at *6 (Tex. App.—Houston [14th Dist.] Jan. 7, 2020, no pet.) (mem. op.) (quoting *Llanes*). While it may not be necessary to prove an actual violation or for a report to specify the law being violated, there must be some law prohibiting the complained-of conduct to give rise to a claim under the Act. *Mullins v. Dallas Indep. Sch. Dist*., 357 S.W.3d 182, 188 (Tex. App.—Dallas 2012, pet. denied) (citing *Llanes*, 64 S.W.3d at 642). "Other complaints and grievances, including alleged violations of an agency's internal procedures and policies, will not support a claim." *Id.* (citation omitted).

A report is made to an appropriate law enforcement authority "if the authority is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." *Id*. § 554.002(b). The supreme court has explained this as follows:

The Whistleblower Act speaks to an authority statutorily empowered to regulate under or enforce the actual law allegedly violated—'the particular law the public employee reported violated is critical to the determination'—or to investigate or prosecute a criminal violation. The upshot of our prior decisions is that for an entity to constitute an appropriate law-enforcement authority under the Act, it must have authority to enforce, investigate, or prosecute violations of law against third parties outside of the entity itself, or it must have authority to promulgate regulations governing the conduct of such third parties. Authority of the entity to enforce legal requirements or regulate conduct within the entity itself is insufficient to confer law-enforcement authority status.

*Univ. of Tex. Sw. Med. Ctr. v. Gentilello*, 398 S.W.3d 680, 686 (Tex. 2013) (citation and internal footnote omitted); *see McMillen v. Tex. Health & Human Servs. Comm'n*, 485 S.W.3d 427, 429 (Tex. 2016); *Tex. Dep't of Transp. v. Needham*, 82 S.W.3d 314, 320 (Tex. 2002).

"Good faith" means that (1) the employee believed that the conduct reported was a violation of law and (2) the employee's belief was reasonable in light of the employee's training and experience." *Wichita Cty v. Hart*, 917 S.W.2d 779, 784 (Tex. 1996); *see McMillen*, 485 S.W.3d at 429 (to be in "good faith," employee's belief about the reported-to authority's powers must be "reasonable in light of employee's training and experience") (quoting *Needham*, 82 S.W.3d at 321). The second part ensures that "the reporting employee only receives Whistleblower Act protection if a reasonably prudent employee in similar circumstances would have believed that the facts as reported were a violation of law." *Needham*, 82 S.W.3d at 320 (citing *Hart*, 917 S.W.2d at 785).

The Act imposes liability on a state or local governmental entity if the employee's report causes an adverse employment action, but it preserves the employing entity's right to suspend, fire, or impose other adverse employment action against the public employee when the employing entity has sufficient, sound reasons or even harbors bad motives never acted upon. *See id.*; *Office of Attorney Gen. v. Rodriguez*, 605 S.W.3d 183, 192 (Tex. 2020) (citation omitted). The public employee "need not prove the report was the 'sole' or the 'substantial' reason for the adverse personnel action" but "must prove that the adverse action 'would not have occurred when it did' if the employee had not reported the violation." *Id.* (citation omitted); *see Apache Corp. v. Davis*, No. 19-0410, 2021 WL 2603824, at *9 (Tex. June 25, 2021). "An adverse employment action 'based solely' on reasons unrelated to a good-faith report of a legal violation destroys the causal link." *Rodriguez*, 605 S.W.3d at 192 (citations omitted); *see Apache Corp.*, 2021 WL 2603824, at *1.

Because evidence of but-for causation is often circumstantial, we examine all of the circumstances and consider a number of factors in determining whether the standard has been met, such as temporal proximity between the protected activity and the adverse action, knowledge of the protected activity, expression of a negative attitude toward the employee's protected activity, failure to adhere to relevant established company policies, discriminatory treatment in comparison to similarly situated employees, and evidence the employer's stated reason is false. *See id*., at *1 n.3; *see also Alamo Heights*, 544 S.W.3d at 790; *City of Fort Worth v. Zimlich*,

–13–

29 S.W.3d 62, 69 (Tex. 2000) (listing same factors except for temporal proximity); *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450–451 (Tex. 1996) (same). However, if the basis for the suspension, termination or other adverse personnel action is undisputed, these factors do not support an inference of the necessary but-for causation. *See Apache Corp.*, 2021 WL 2603824, at *10 (stating this in a non-whistleblower case requiring but-for causation).

A public employee who sues under the Act has the burden of proof, except that if the employee's suspension, termination, or other adverse personnel action against the employee occurs not later than the ninetieth day after the date on which the employee reports a violation of law, the suspension, termination, or adverse personnel action is presumed, subject to rebuttal, to be because the employee made the report. TEX. GOV'T CODE § 554.004(a).

Before a public employee sues under the Act, the employee "must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action." TEX. GOV'T CODE § 554.006(a). This must be done "not later than the 90th day after" the date on which the alleged violation "occurred" or "was discovered by the employee through reasonable diligence." *Id.* § 554.006(b) (requiring employee to "invoke the applicable grievance or appeal procedures" by that time).

These procedures are "comparatively simple," and exhaustion of them is not required. *Lopez*, 259 S.W.3d at 154 (describing procedures as "comparatively simple" in discussion of whistleblower and other types of claims); *Univ. of Tex. Med. Branch v. Barrett*, 159 S.W.3d 631, 632 (Tex. 2005) (per curiam) (exhaustion not required).[7] Their goal is to give the governmental entity the opportunity to investigate and correct its errors and to resolve disputes before incurring the expense of litigation. *Herrera*, 609 S.W.3d at 586 (citations omitted).

If the applicable procedures are not followed, the suit may be dismissed for lack of jurisdiction. *See City of Madisonville v. Sims*, 620 S.W.3d 375, 378 (Tex. 2020).[8] If a final decision is not rendered before the sixty-first day after the procedures are initiated under section 554.006(a), a public employee may elect to exhaust those procedures or terminate them and timely file suit. *See* TEX. GOV'T CODE § 554.006(d).

---

[7] *Barrett* states, "Section 554.006 does not require that grievance or appeal procedures be exhausted before suit can be filed; rather, it requires that such procedures be timely initiated and that the grievance or appeal authority have 60 days in which to render a final decision." *Barrett*, 159 S.W.3d at 632.

[8] In *Sims*, the court considered whether it was proper to dismiss for lack of jurisdiction a lawsuit filed by an employee after the expiration of the Whistleblower Act's ninety-day limitation period under section 554.005, not its grievance initiation requirement under section 554.006(a). *Sims*, 620 S.W.3d at 378; *see* TEX. GOV'T CODE §§ 554.005, 554.006(a). In deciding that issue, the court stated, "When a statutory prerequisite to suit is not met, 'whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit),' the suit may be properly dismissed for lack of jurisdiction." *Sims*, 620 S.W.3d at 378 (quoting *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 515 (Tex. 2012)). Thus, based on *Sims*' reasoning, it appears clear that section 554.006(a) creates a condition precedent to suit and that a claim failing to meet section 554.006(a)'s requirement may properly be disposed of by a jurisdictional plea. *See Sims*, 620 S.W.3d at 379 (noting, with respect to section 554.005's language, that use of the word "must" creates a condition precedent and that a claim that fails to satisfy section 554.005's ninety-day limitations deadline may properly be disposed of by a jurisdictional plea); TEX. GOV'T CODE § 554.006(a) ("A public employee must initiate action under the grievance or appeal procedures of the employing state or local governmental entity relating to suspension or termination of employment or adverse personnel action before suing under this chapter.")

The City raises three issues, arguing the trial court erred in denying its plea to the jurisdiction because Birchett (1) did not initiate the City's grievance policy before filing suit as required under section 554.006(a), (2) did not make good faith reports of the City's violations of law to appropriate law enforcement authorities, and (3) was not terminated because of any protected report.

*Compliance with Government Code § 554.006*

Birchett filed suit on May 15, 2019, the sixty-first day after his counsel sent the March 15, 2019 letter. In his pleading, Birchett asserted that he "has fulfilled the jurisdictional requirements under § 554.006 of the Texas Whistleblower Act" and identified the March 15, 2019 letter in the same paragraph. His pleading also stated, "Today is the 61st day since [he] began the grievance procedure and no final decision has been rendered by the City in response to [that] letter. Accordingly, [Birchett] hereby elects to terminate the grievance procedure and file suit under the Texas Whistleblower Act, as permitted under § 554.006(d)(2) thereof."[9]

In its answer, the City agreed that the March 15, 2019 letter initiated its grievance procedure—at least as to Birchett's termination claim—as it referred to Birchett "initiating the grievance procedure on March 15, 2019, regarding his

---

[9] Also on May 15, 2019, Birchett's counsel sent a letter to the City's attorney citing section 554.006(d) and stating, in part, "Birchett hereby terminates the grievance and appeal procedure."

termination."[10]  But the City also stated Birchett refused to participate and cooperate with its efforts to gather information in order to conduct its whistleblower grievance process, and the City specifically denied that Birchett had satisfied the conditions precedent to suit.  The trial court disagreed, stating that Birchett "properly and timely initiated a grievance" under section 554.006.[11]

In its first issue, the City argues, in essence, that Birchett failed to satisfy section 554.006 when he created his own grievance process and refused to provide requested information to the City about his grievance.[12]  More specifically, the City argues that Birchett did not initiate its grievance policy when he did not submit a written complaint to its Employee and Labor Relations Division [ELRD] and when he did not provide information necessary to investigate the complaint.

Birchett, in contrast, argues he initiated and invoked the City's applicable grievance procedure through his counsel's March 15, 2019 letter and provided the

---

[10] Because neither party raises the issue, we need not decide whether this statement constitutes a judicial admission.  *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) (judicial admission must be "clear, deliberate, and unequivocal statement" that "occurs when an assertion of fact is conclusively established in live pleadings" and relieves an adversary from making proof of the fact admitted and "also bars the party himself from disputing it."); *Restrepo v. All. Riggers & Constructors, Ltd.*, 538 S.W.3d 724, 740 (Tex. App.—El Paso Sept. 22, 2017, no pet.) ("A judicially admitted fact is established as a matter of law, and the admitting party may not dispute it or introduce evidence contrary to it." (citing *Lee v. Lee*, 43 S.W.3d 636, 641 (Tex. App.—Fort Worth 2001, no pet.)).

[11] The court stated the grievance was properly and timely filed under section 554.006(d), which allows public employees to exhaust or terminate the applicable grievance procedures under subsection (a).

[12] The City's first issue states, "When Birchett created his own grievance process and refused to provide requested information to his employer about the grievance, did he satisfy the Texas Whistleblower Act, which required him to 'initiate action under the grievance procedures of the local governmental entity'"?

City with ample evidence to investigate his claims and an opportunity to interview him before he filed suit.

Both sides presented evidence in the trial court on this issue. The City's pertinent evidence generally included the March 15, 2019 letter from Birchett's counsel, deposition testimony from Birchett and the City's ELRD manager, emails between the parties' counsel, and section 14.4 of the City's Personnel Rules and Regulations (PRRs).[13] Birchett's pertinent evidence generally included his affidavit

---

[13] Section 14.4 of the City's PRRs state, in pertinent part:

14.4    Whistleblower Complaints

. . . .

An employee or former employee must file a complaint of retaliation for reporting a violation of law by a public employee ("whistleblower" complaint) not later than the 90th day after the date on which the alleged adverse employment action occurred or was discovered by the employee through reasonable diligence. . . .

*Filing and investigation of complaints*

Complaints must be filed in writing with the Human Resources Department's Employee and Labor Relations Division [ELRD]. All reports must include the following information:

- Contact information, including name, address, and telephone number for the Complainant.

- The Complainant's employee number and position (or former position) with the City.

- The nature of the alleged adverse employment action taken against the Complainant.

- The date of the alleged adverse action taken against the Complainant.

- The name of the employee's supervisor.

- The name of the individual who allegedly caused an adverse employment action.

- The facts that are the basis of the complaint, including dates that incidents occurred and names of individuals who may have knowledge of the facts.

Complainants must cooperate in the investigation and provide timely and accurate information relevant to the complaint as requested by the investigators. Failure of the complainant to cooperate or provide accurate information during the investigation process impedes the ability of the investigators to conduct a thorough review and will be noted in the findings as appropriate. It is the complainant's responsibility to update contact information, in the event of a change. This is a prerequisite to suit under the Texas Whistleblower Act.

and deposition excerpts, an affidavit from his counsel, emails between the parties' counsel, and two letters from his counsel—the same March 15, 2019 letter the City relied on, and the May 15, 2019 letter terminating the grievance and appeal procedure under section 554.006(d).

According to Birchett's affidavit, on February 19, 2019, four days after his termination, he visited ELRD, explained the circumstances, and was told by ELRD personnel that he could not appeal his termination because he was a manager. Considering that he might have a whistleblower claim, Birchett then hired counsel, who then sent the March 15, 2019 letter to the City attorney regarding his claims.

In that March 15, 2019 letter, Birchett provided, among other things, his name and his counsel's name, address, and telephone number; his former position with the City; the nature and dates of the alleged adverse actions taken against him; the name of his supervisor; the name of the individual who allegedly caused an adverse employment action; and names, event dates, and facts explaining the basis of his complaints—in other words, the same information required under section 14.4 of the City's PRRs. After receiving the March 15, 2019 letter, the City attorney forwarded it to ELRD and effectively treated the letter as if it had been sent to ELRD—the entity designated to receive whistleblower complaints under the City's grievance

policy.  Both parties' counsel then exchanged several emails, sixteen of which were included as evidence in connection with the City's plea.[14]

Both parties claim the evidence supports their position, and both rely on cases from our sister courts as support.  The City primarily relies on *Fort Worth Independent School District v. Palazzolo*, No. 02-13-00006-CV, 2014 WL 69889 (Tex. App.—Fort Worth Jan. 9, 2014, no pet.) (mem. op.), *Aguilar v. Socorro Independent School District*, 296 S.W.3d 785 (Tex. App.—El Paso 2009, no pet.), and *Johnson v. The City of Dublin*, 46 S.W.3d 401 (Tex. App.—Eastland 2001, pet. denied).  Birchett, on the other hand, primarily relies on *Fort Bend Independent School District v. Gayle*, 371 S.W.3d 391, 395 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Of those cases, we consider *Gayle* to be the most analogous.  In *Gayle*, the employee filed a lengthy, detailed complaint about her allegations, initiating a grievance in the manner provided for under the grievance procedure.  371 S.W.3d at 397.  Despite that, the employer later argued that she failed to initiate its grievance

---

[14] These sixteen emails reflect that they were exchanged by counsel between April 11, 2019 and May 9, 2019.  Half were sent by the City's counsel; the other half, by Birchett's counsel.  In an April 15, 2019 email, the City's attorney provided the PRRs to Birchett's counsel, informed him that "Chapter 14 deals with complaints," and stated, "If your clients refuse to participate in this process, the investigator will be forced to make a determination without their input."  Both counsel also discussed interviews of Birchett and others in various emails, and in another, Birchett's counsel provided a summary of what, in his view, the evidence currently showed.  On May 9, 2019—in the last of the emails in the record between parties' counsel—the City's attorney sent Birchett's counsel a blank form and stated that the form "is part of the internal grievance procedure" and that "completing it would help the investigator in conducting a thorough investigation."  Also, as late as May 8 and 9, 2019, both parties' counsel communicated about scheduling an interview for Birchett and another of Birchett's counsel's clients, with suggested dates from the City attorney ranging between May 22, 2019, and June 7, 2019.

–20–

procedure because she thwarted its efforts to have a hearing. *Id*. at 395. After noting the legislature had changed section 554.006(a)'s prior requirement that employees "exhaust" grievance procedures to the current requirement that they "initiate" them, the court rejected the argument that an employee must meaningfully participate in the employer's grievance procedure and affirmed the trial court's denial of the employer's plea to the jurisdiction based on the evidence in that case. *Id*. at 397–99.

While the employee in *Gayle* initiated a grievance in "precisely" the manner provided for under the employer's grievance procedure, *see Gayle*, 371 S.W.3d at 397, that Birchett's was not is a distinction without a difference, when the City treated the letter as if it had been sent to ELRD as its policy required and received the information required under its policy, and when its pleading stated the March 15, 2019 letter initiated a grievance regarding his termination.

The cases primarily relied on by the City are distinguishable. In *Johnson*, the earliest of those cases, the employee argued he was not required to submit a written complaint to the city manager as required by the employer's grievance policy because other officials already knew he believed he was terminated because of the criminal investigation he had commenced. *Johnson*, 46 S.W.3d at 404–05. Birchett makes no similar argument here. Unlike the employee in *Johnson*, Birchett does not argue that a written complaint was unnecessary; instead, he argues that he satisfied the policy requirements through his counsel's March 15, 2019 letter. We agree.

In *Aguilar*, an employee submitted a written grievance, but during the arbitration process that followed, the employee's counsel refused to tell the arbitrator certain information, such as when or to whom the employee reported the violation of law that formed the basis of the employee's whistleblower claim, and contended the arbitrator lacked authority to rule on the legal issues involved. *Aguilar*, 296 S.W.3d at 787, 790. Birchett made no such refusals or arguments here.

In *Palazzolo*, the employee argued he timely initiated a grievance but had no obligation to then participate in the resulting grievance process, and during the grievance hearing, he maintained that the issues that were the subject of his grievance had been fully resolved—which, in turn, effectively led the employer to believe there was no need to investigate or correct any potential misconduct allegedly committed by its personnel. *Palazzolo*, 2014 WL 69889, at *2. In construing *Gayle* and *Aguilar*, the court stated:

> [A] claimant satisfies section 554.006's initiation requirement by timely invoking the governmental entity's grievance or appeal procedure before filing a whistleblower action; however, if a party who invokes a grievance or appeal procedure goes on to actively circumvent the governmental entity's efforts to redress the complained-of conduct, that party does not comply with section 554.006's initiation requirement.

*Palazzolo*, 2014 WL 69889, at *5. Based on that rule and the evidence in that case, the court reversed the trial court's denial of the school district's plea to the jurisdiction, holding that the school district met its burden to show as a matter of law

–22–

that Palazzolo did not properly initiate its grievance process and failed to come forward with evidence raising a fact issue showing otherwise. *Id*. at *2–6.

Even if *Palazzolo*'s statement of the law is correct—a matter we need not and do not decide—its ruling simply does not apply to the facts before us because there is no evidence that Birchett made any such representations or actively circumvented the City's efforts to redress the conduct about which he complains.

While the City presented evidence regarding its grievance policy and other evidence of its communications with Birchett's counsel—including evidence that an intake form was not returned after the March 15, 2019 letter was received and that Birchett's interview with an investigator was not scheduled before he filed suit— there is also evidence that the March 15, 2019 letter provided the City with the same information required by the City's policy and that the City treated the letter as if it was received by ELRD as the policy required. Additionally, the City communicated its intention for its investigator to investigate and make a determination on Birchett's claims, regardless of any additional input from Birchett, and the City stated in its pleading that Birchett "initiate[d] the grievance procedure on March 15, 2019 regarding his termination." Moreover, despite the City's suggestion that the communications by Birchett's counsel were meant to simply string the City along until the sixty-first day after the May 15, 2019 letter, we find no evidence that Birchett was unwilling to cooperate and participate in the City's grievance procedure or that he actively circumvented it.

Viewing the evidence as we must, *see Alamo Heights*, 544 S.W.3d at 771, we conclude a fact question exists on whether Birchett initiated action under the City's grievance policy as required by section 554.006(a). *See* TEX. GOV'T CODE § 554.006(a); *Herrera*, 609 S.W.2d at 590 (reversing order granting plea to the jurisdiction where employee's grievance notified employer of the same allegations in the lawsuit); *City of Lubbock v. Walck*, No. 07-15-00078-CV, 2015 WL 7231027, at *6 (Tex. App.—Amarillo Nov. 16, 2015, pet. denied) (mem. op.) (distinguishing *Palazzolo* and affirming denial of city's plea to jurisdiction where employee neither refused to fully participate in the process nor represented he was satisfied with the relief he received); *Gayle*, 371 S.W.3d at 397–99. We overrule the City's first issue.

*Good Faith Reports Under Government Code § 554.002*

In its second issue, the City argues that court erred in denying its plea because Birchett did not make good faith reports of the City's violations of law to appropriate law enforcement authorities. In its order denying the City's plea, the trial court concluded Birchett had produced sufficient evidence to support his claim that he did.

We previously included the pertinent allegations in Birchett's petition regarding his whistleblower reports. *See* n.2, *supra*. In the affidavit he provided in connection with his response to the City's plea, he provided similar sworn information about the information he reported, including information shared in connection with the DPS audit through a questionnaire and in subsequent meetings

–24–

with Enriquez (the DPS auditor), Fitzgerald (the police chief), and other law enforcement personnel.

As to Birchett's reports to Enriquez, the City first argues his reports do not constitute a good faith report for whistleblower purposes because Enriquez is not a law enforcement officer. However, Birchett testified that he and Enriquez first met at the police communications center and he believed Enriquez to be a police officer because, during their first meeting, Enriquez stated he felt he had been lied to and misled on previous audits and had the authority to arrest people he felt misled him.

As to Birchett's reports to Enriquez and Fitzgerald, the City also argues the reports do not constitute good faith reports for whistleblower purposes because they amount to no more than reports of policy violations. As support, the City notes that the CJIS Security Policy's executive summary refers to the policy as a "policy," not a law, and argues that it is akin to the types of policy violations we found to be insufficient for whistleblower purposes in *Pulkabek v. University of Texas Southwestern Medical Center*, No. 05-14-01341-CV, 2016 WL 3004476 (Tex. App.—Dallas May 25, 2016, pet. denied) (mem. op.) and *Thobe v. University of Texas Southwestern Medical Center*, No. 05-14-01450-CV, 2016 WL 3007027 (Tex. App.—Dallas May 25, 2016, pet. denied) (mem. op.).

*Pulkabek* and *Thobe* are distinguishable. In those two cases, the employees reported UT Southwestern's non-compliance with the federal guidelines pertaining to the humane testing of animals to the National Institutes of Health Office of

Laboratory Animal Welfare (OLAW), and in both cases, there was no evidence in the record to support the employees' contention that OLAW derived its authority from the law that the employees identified as the source of the establishment of the guidelines alleged to have been violated, the Health Research Extension Act of 1985. *See Pulkabek*, 2016 W 3004476, at *1; *Thobe*, 2016 WL 3007027, at *1. Moreover, the record did not contain a copy of the policy, and nothing in the record showed that the policy was equivalent to a rule adopted under a statute or ordinance. *Thobe*, 2016 WL 3007027, at *3–4. In both cases, we noted that the employees' belief regarding OLAW being an appropriate law enforcement authority had to be objectively reasonable, and we concluded based on the record in those cases that the employees had not made good faith reports of violations of law for whistleblower purposes. *See Pulkabek*, 2016 W 3004476, at *3; *Thobe*, 2016 WL 3007027, at *4.

In this case, however, the record contains the CJIS Security Policy, which "provides Criminal Justice Agencies (CJA) and Noncriminal Justice Agencies (NCJA) with a minimum set of security requirements for access to Federal Bureau of Investigation (FBI) Criminal Justice Information Services (CJIS) Division systems and information and to protect and safeguard Criminal Justice Information (CJI)." Among other things, the CJIS Security Policy "integrates presidential directives, federal laws, [and] FBI directives," "applies to all entities with access to, or who operate in support of, FBI CJIS Division's services and information," and

provides "minimum security requirements associated with the creation, viewing, modification, transmission, dissemination, storage, or destruction of CJI."

Additionally, Fitzgerald's December 20, 2018 memo indicates that certain CJIS violations had occurred, including "the continued permission level of person(s) with permanent CJIS disqualifiers who have access to FWPD facilities and servers." Fitzgerald's memo stated that if those violations continued, "we shall strictly adhere to the law," including "filing charges against persons not authorized to access CJIS info who are discovered in violation of the law." The memo also stated that the City's violations could result in "serious administrative and criminal sanctions."

Based on this record, and viewing the evidence as we must, *see Alamo Heights*, 544 S.W.3d at 771, we conclude a fact question exists on whether Birchett made good faith reports of the City's violations of law to appropriate law enforcement authorities. *See Cucchi v. Kagel*, Civil Action No. 17-01597, 2018 WL 1141255, at *5–6 (E.D. Pa. Mar. 2, 2018) (mem. op.) (in case brought under Pennsylvania whistleblower statute[15] based on reports of alleged CJIS violations, court rejected argument that employee failed to make a whistleblower report and denied employer's motion to dismiss claim because court could not conclude at that stage that the CJIS policy was not a regulation within the meaning of the law).

---

[15] The court noted that the Pennsylvania whistleblower law "makes it unlawful for an employer to 'discharge, threaten or otherwise discriminate or retaliate against an employee ... because the employee ... makes a good faith report . . . to the employer or appropriate authority [of] an instance of wrongdoing or waste by a public body[.]'" *Cucchi*, 2018 SL 1141255, at *5 (quoting 43 PA. CONS. STAT. § 1423(a)).

We overrule the City's second issue.

*Causation as to Termination Claim*

In its order denying the City's plea, the trial court stated, "[Birchett] has produced sufficient evidence that he was placed on administrative leave and terminated in retaliation for his report."

In its third issue—which addresses Birchett's termination claim, but not his administrative leave claim[16]—the City argues, in essence, that the trial court erred in denying the plea on the termination claim because Birchett was not terminated because of any protected report.[17] In other words, the City challenges causation.

Birchett argues that because he was terminated on February 15, 2019, less than ninety days after his December 19, 2018 reports to Enriquez, Fitzgerald, and others, his termination is presumed to be because of those reports. *See* TEX. GOV'T CODE § 554.004(a) (stating, among other things, if termination occurs not later than

---

[16] While the City's principal brief includes a footnote suggesting the administrative leave claim fails because it was not an adverse personnel action, we need not decide that issue because the question is not properly before us, considering that the trial court made no ruling on that issue and the City did not raise it as an issue on appeal. *See* TEX. R. APP. P. 33.1(a)(2); 38.1(f). Also, although the City specially excepted to Birchett's allegation that being placed on administrative leave was an adverse personnel action, based on the record before us, the City obtained no ruling and thereby waived any objection on appeal as to the alleged pleading deficiency. *See Smith v. Grace*, 919 S.W.2d 673, 678 (Tex. App.—Dallas 1996, writ denied) (citations omitted) (concluding appellant waived any complaint concerning pleading deficiencies where record contained no ruling on appellant's special exceptions).

[17] The City's third issue states, "Where Birchett alleges that his supervisor learned details about the audit from a memo stating that someone other than Birchett brought the cybersecurity issues to the auditor's attention, has he sufficiently alleged a causal connection between his alleged statements to the auditor and his termination?"

–28–

ninetieth day after date employee reports a violation of law, the termination is presumed, subject to rebuttal, to be because the employee made the report).

The City argues that any presumption was rebutted and, in its principal brief, argues that Birchett was "terminated because he failed to do the job he was entrusted with—ensuring compliance with various cybersecurity-related guidelines." As evidentiary support, the City cites only to certain portions of Birchett's testimony, specifically, pages 101 and 188 of Birchett's deposition, and to the February 15, 2019 termination letter signed by Gunn.

The City also refers to the absence of evidence from Birchett showing that Gunn—the person the City identifies as the decisionmaker—knew about Birchett's reports. However, the City does not direct us to—and the record does not contain—any affidavit, declaration, or other testimony from Gunn about this issue or about the reason or reasons Birchett was terminated. Contrary to the City's suggestion otherwise, the portions of Birchett's testimony that the City directs us to do not establish that what is in the termination letter is the reason Birchett was terminated, and he disputes that it was.

As to the City's argument that the causation presumption does not apply because Birchett submitted no evidence that Gunn knew about Birchett's reports, the City relies on *Kirkland v. City of Austin*, No. 03-10-00130-CV, 2012 WL 1149288 (Tex. App.—Austin Apr. 5, 2012, no pet.) (mem. op.). *Kirkland* is distinguishable. First, *Kirkland* involved an employer's no-evidence summary judgment motion, *id*.

–29–

at *4, which does not impose the same burden on an employer as is imposed when the employer files a plea to the jurisdiction challenging jurisdictional facts with evidence. *See Alamo Heights*, 544 S.W.3d at 771 (when governmental unit does not challenge the pleadings but instead challenges the existence of jurisdictional facts with supporting evidence, standard of review mirrors that of a traditional summary judgment); *see also* TEX. R. CIV. P. 166a(c), 166a(i) (outlining traditional and no-evidence summary judgment burdens). Second, unlike the City here, the employer in *Kirkland* presented sworn testimony from the decisionmaker that she did not know of the employee's reports when she decided to place the employee on administrative leave.[18] *Id*. at *3. In light of that evidence, the court concluded the employee could not avail himself of the causation presumption and had to produce some evidence to show that the decisionmaker knew of the employee's report. Because he did not do so, the court affirmed the trial court's order granting the city's no-evidence summary judgment motion. *Id*. at *3–4. Here, the City presented no such evidence.

In *Galveston County v. Quiroga*, an employer challenging an employee's pleadings argued that the causation presumption was rebutted because the employee had no evidence that the decisionmaker knew about her protected report. Unpersuaded by that argument, the court noted the applicable review standards and concluded that the employee had pleaded sufficient facts to support the presumption

---

[18] In *Kirkland*, the employee's placement on administrative leave was the only adverse action that was not time-barred from generating a statutory presumption of causation. *Id*. at *3.

of causation under the Act. 2020 WL 62504, at *6 (noting employee alleged in her pleadings that employment was terminated within ninety days of protected report).

We are equally unpersuaded here. In light of the absence of evidence from the City that Gunn did not know about Birchett's report, we conclude that the City failed to meet its burden to rebut the presumption of causation under 554.004(a) as to Birchett's termination claim. Under such circumstances, Birchett was not required to come forward with his own evidence that Gunn knew of Birchett's reports when he terminated him when Birchett responded to the City's plea. *See* TEX. GOV'T CODE § 554.004(a) (causation presumption); *Alamo Heights*, 544 S.W.3d at 771 (when governmental unit does not challenge the pleadings but instead challenges the existence of jurisdictional facts with supporting evidence, standard of review mirrors summary judgment standard).

We overrule the City's third issue.

CONCLUSION

We affirm the trial court's order denying the City's plea to the jurisdiction.


/Ken Molberg/
KEN MOLBERG
JUSTICE

200265F.P05

–31–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CITY OF FORT WORTH, Appellant

No. 05-20-00265-CV          V.

WILLIAM BIRCHETT, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-06941. Opinion delivered by Justice Molberg. Justices Reichek and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee WILLIAM BIRCHETT recover his costs of this appeal from appellant CITY OF FORT WORTH.

Judgment entered July 29, 2021.